LEE and others *vs.* THE METHODIST EPISCOPAL CHURCH OF
FORT EDWARD, and others.

In an action to foreclose a mortgage executed by individuals as "trustees" of
a religious corporation named, extrinsic proof of facts to show whether the
mortgage was the act of the corporation, or the individual act of the persons
signing it, is admissible.

If it was intended by the parties, and especially by the corporation, to be its
mortgage, and there is some evidence upon the face of the papers, of such
intent, it is erroneous to exclude all explanation, and all extrinsic evidence
to show that it was the object and intent of the parties to make it the obliga-
tion of such corporation, and not the individual obligation of the persons
signing it.

It is only in cases where the language admits of no doubt, and is without
ambiguity, that evidence in explanation is excluded.

Where a bond and mortgage contained a recital that the persons executing them
were "trustees" of a corporation named, and a promise to pay, by them and
*their successors in office ;* Held that this was a clear implication of language that
the obligation was, and was intended to be, that of the corporation.

*Held, also,* that the presumption arising from these facts was strengthened by
resorting to the acknowledgment of the mortgage, in which each of the per-
sons executing the instrument stated that he was a trustee of the corpora-
tion ; that he signed his name as trustee and affixed a seal thereto, by and
under the order and resolution of the board of trustees ; and that the instru-
ment was executed by him, as such trustee, for the purposes therein men-
tioned.

APPEAL by the plaintiffs from a judgment entered
upon the decision of a referee, dismissing the plain-
tiffs' complaint.

*N. B. Milliman,* for the plaintiffs.

*Wait & Reynolds,* for the defendants, the Methodist
Episcopal Church.

*By the Court,* POTTER, J. This action was brought,
mainly, to foreclose a mortgage given to one Lee, the
plaintiffs' assignor, and alleged to have been given by the
defendants, "The Methodist Episcopal Church of Fort
Edward," for a part of the purchase money of the prop-

erty described in the mortgage, and partly for moneys advanced to said defendants by said Lee.

I do not enter upon a full history of the case in its details, as it seems to me there should be a new trial granted upon some of the rulings and decisions of the learned referee, made on the trial. There was sufficient evidence in the case, to show that the defendants, "The Methodist Church," had an estate in the premises in question that was the subject of mortgage. The defendants, as a corporation, were the owners of the property so mortgaged; and nearly half of the sum included in, or secured by the mortgage, ($700,) was for the purchase money of the property covered by the mortgage, and the remainder was for money, or its equivalent, advanced to the corporation. The debt attempted to be secured, was the debt of the corporation. It was admitted that the said defendants were a corporation, and that the persons who executed the bond and mortgage, were trustees of the said corporation at the time of their execution of said bond and mortgage. The claim in question had been assigned to the plaintiffs. An order of the court had regularly substituted them as parties plaintiff. The plaintiffs offered to prove that the persons signing the bond and mortgage given in evidence were all the trustees of said corporation. This was objected to as immaterial, and the objection was sustained by the referee, and exception taken. The five persons who had executed the said bond and mortgage, with each a common private seal, had added to their signatures, the word, "*trustees.*" In their description as parties of the first part in the mortgage, there was added to the mortgagor's names, the words, "trustees of the Methodist Episcopal Church in the village of Fort Edward, in the county of Washington." At the end of the description of the property, was also this addition : "Being the premises conveyed to the trustees of said Methodist Episcopal Church by the said second party, (Stephen B. Lee,) and this instrument

is given to secure the purchase price of said premises, and moneys advanced for the erection of *the church edifice* now located on said lot." In the bond accompanying said mortgage, executed in like manner, and bearing even date therewith, in the description of the obligors, they add to their names the words, "trustees of the Methodist Episcopal Church of Fort Edward, New York;" and "bind themselves and *successors in office,* jointly and severally to pay;" and in the condition, the payment is to be made by the obligors, "*or their successors in office.*" The proof of the acknowledgment of the execution of the mortgage was by the affidavits of the five mortgagors, who were severally sworn, not to their identity, for the justice before whom it was taken, certifies that they were well known to him, "and that they did, severally, and each for himself, depose and say, that he resides in the village of Fort Edward in said county; *that he is a trustee* of the Methodist Episcopal Church in the village of Fort Edward, a corporation, duly organized and incorporated, under and by virtue of the laws of the state of New York; that said corporation has no particular corporate seal; that he signed his name to the foregoing instrument *as such trustee and affixed the seal thereto, by and under the order and resolution of the board of trustees of said corporation,* duly made and given in writing on the 10th day of August, 1857; *and that the same was executed by him, as such trustee, for the purpose therein mentioned.*"

The plaintiffs then offered to prove, among other things, the following:

1. "That on the 16th August, 1857, 'the Methodist Episcopal Church of Fort Edward,' was indebted to said Lee, (the plaintiffs' assignor,) in the sum and in the manner specified in the mortgage; and that no part has since been paid, except one year's interest.

2. That Lee knew that the persons signing such bond and mortgage, were trustees of the said church, and were

Lee *v*. Methodist Episcopal Church of Fort Edward.

acting as such; and that the credit was given exclusively to the corporation.

3. That the trustees intended to bind the corporation, and not themselves individually.

4. To prove a resolution of the board of trustees, directing the execution of the mortgage to Lee, and that the mortgage was executed in pursuance of that resolution."

Each of these propositions were objected to by the defendants, on the ground that the evidence offered was immaterial; the objections were severally sustained by the referee, and the plaintiffs excepted, severally, to the rulings.

The defendants asked the referee to nonsuit the plaintiffs, and to dismiss the plaintiff's complaint, upon the grounds above mentioned, and of failure to prove their case, and other grounds:

1. The referee held and decided that the bond and mortgage given in evidence was not the bond and mortgage of the corporation; but was the individual bond and mortgage of the persons executing the same.

2. That the plaintiffs could not be allowed to prove that the bond and mortgage were those of the corporation; or that the trustees intended to bind the corporation, and not themselves personally.

3. That no relief, except foreclosure, could be granted in this action, under any evidence that had been given *or offered.*

4. That the plaintiffs had not established their cause of action alleged in the complaint.

5. That the plaintiffs be nonsuited, and the complaint be dismissed.

To these rulings, severally, the plaintiffs excepted.

I am unable to concur in the result of these rulings, and propose but a brief examination of them, in the light of the law, as I understand it, of the proof given, and of the offers of evidence to be given, as above stated, that was objected to and rejected.

The first and second propositions, held by the learned referee, appear to me to be in direct conflict with the principle of the law of evidence as held at general term in this district, in *Hunter* v. *Hudson River Iron and Machine Co.*, (20 *Barb.* 493, 503, 504.) It was there held, that though a mortgage purported on its face to be the mortgage of a corporation, executed only by its treasurer, but with evidence of his authority to make it, evidence was admissible to prove directly or circumstantially, that it was not their mortgage; that the treasurer had no power to execute it; and that no resolution of the corporation had ever been passed creating the authority. This case, I think, clearly establishes the principle, that this extrinsic proof of facts to show whether the mortgage was, or was not, the act of the corporation, is admissible. If it purports to be the mortgage of the corporation, but is not, it may be shown by such extraneous facts that it is not. If it was intended by the parties, and especially by the corporation, to be their mortgage, and there is, as in this case, some evidence upon the face of the papers of such intent, though without more or further evidence, it might be insufficient. The law of equity does not exclude all explanation, and all extrinsic evidence to show the object and intent of the parties, from the language employed, to make it their obligation. In the case of *Choteau* v. *Suydam*, in the Court of Appeals, (21 *N. Y. Rep.* 181, 182,) the same principle was recognized in the case of an executor who had merely recited his title, as such, in a contract. Selden, J. says: "Where the contract itself is ostensibly made in behalf of an estate, and relates exclusively to matters in which the executor has no personal interest, if the latter, in making the contract, describes himself as executor, &c. the presumption is, that he intended to bind the estate, and not himself." He also says, at page 181: "The question whether those who executed the contract are bound, depends upon the circumstances under which it was deliv-

ered. Those circumstances are open to proof by parol." It was claimed that *prima facie* this was the individual bond and mortgage of the persons signing them; and that the addition to their names, of trustees of the Methodist church of Fort Edward, New York," was mere *descriptio personarum.* While this proposition may be conceded in certain cases to be so, it never was held that such evidence as this case presents to the contrary, made it conclusive, and incapable of explanation. It is only in cases where the language admits of no doubt, and is without any ambiguity, that explanation is excluded. The most that can be claimed on this point is, that the language of the instrument, and its form of execution, created an ambiguity as to whom it was intended should be the obligor, or obligors, in the said bond and mortgage. This was the question. Were the individuals who did not owe the debt, but whose names were inserted in the instrument with the addition that they were trustees of the corporation that did owe the debt, the obligors therein? Or, was the corporation which did owe the debt, and whose property was mortgaged to pay it, and which could only execute the obligation by its trustees, the real obligor? There are a number of cases in which, *prima facie,* and without the extraneous circumstances to show it to be otherwise, an obligation in such form, without other explanation, is held to be an individual obligation, and the addition to be mere matter of description, but such *prima facie* evidence is not conclusive; nor does that circumstance or presumption exclude evidence to overcome it. The same addition which, in one case, would be mere matter of description of the *persons* subscribing, would, in another case, connected with other circumstances creating an ambiguity, be evidence to explain from the language used, the intent of the parties to be descriptive of the corporation whose debt they were intending to secure. Upon such a question of ambiguity, extrinsic evidence is clearly admissible. If certain words are

presumptively descriptive of a natural person, may not words also be descriptive of an artificial person?

I do not concur in the opinion that in this case it was *prima facie* the bond and mortgage of the individuals named; but I do not base my decision on this. If the weight of evidence sustains the decision, that weight might, perhaps, have been changed by the evidence offered and overruled.

In reviewing the legal rulings of the learned referee, we may assume as proved, the facts offered to be proved, and rejected by him, and that the decision would have been the same, if the facts offered had been proved. How would the case then appear? Thus: A resolution of the board of trustees, directing the execution of the mortgage to Lee; and, that the mortgage was executed in pursuance of that resolution; that at the date of that mortgage, the defendants, "The Methodist Episcopal Church of Fort Edward," was indebted to Lee in the sum, and in the manner specified in the mortgage; and that no part of it had been paid, but one year's interest; that all the trustees of the said corporation signed the bond and mortgage which had been given in evidence; that the said trustees intended by said instruments to bind the said corporation; and that they did not intend to bind themselves individually. These facts the learned referee decided were immaterial. The facts that did appear upon the face of the papers, were: first, a recital that the individuals named were trustees of the defendants' corporation; and a promise in the obligation, to pay, by them, and *their successors in office.* To my mind this is a clear implication of language that the obligation was, and was intended to be, that of the corporation. Nor was that all; at the time of the acknowledgment of the obligation for record, each of the individuals composing the trustees, under their oath, did depose that he was a *trustee* of the said corporation; which was duly organized under and

Lee *v.* Methodist Episcopal Church of Fort Edward.

by virtue of the laws of this state; that said corporation had no particular corporate seal; that each signed his name as trustee; and affixed the seal thereto, by and under the order and resolution of the board of trustees of said corporation duly made and given in writing on the 10th of August, 1857. And that the same was executed by him as such trustee for the purposes therein mentioned." This, then, was the way the corporation chose to execute their obligation. True, it may be said this acknowledgment is no part of the bond and mortgage; but it is evidence of their execution. It is even evidence of their being executed by the corporation. This is not the mere individuals' acknowledgment of the obligations. The corporation, as such, would be estopped from denying that they executed these papers. They having induced others to act upon the faith that this obligation was their own, it is evidence that a resolution was passed by the corporation, authorizing the execution of the papers. (*Laws of* 1833, *ch.* 271, § 9.) No order of a court, as was supposed, was necessary to authorize the defendants to mortgage their estate to pay a pre-existing debt. (27 *Barb.* 53.) But suppose that with some evidence, that these instruments were the obligations of the said corporation there was still ambiguous language, it was but a latent ambiguity, and one that arose in ascertaining who were the real obligors. Extrinsic and parol evidence can always be offered by way of explanation in such a case. "Latent ambiguity, may be supplied by evidence; for an ambiguity which arises by proof of an extrinsic fact, may in the same manner be removed." (*Bacon's Maxims, Reg.* 25. *Broom's Maxims,* 468.) Chancellor Kent says: "When the ambiguity arises, and not appearing on the face of the instrument, but entirely in the application of it, as when the person or object in view is not designated with precision, then the above cited maxim applies." (2 *Kent's Com.* 456.) And equity will never allow the intent of the parties to

fail of being carried out, by reason that such intent is uncertainly, or ambiguously expressed; and evidence will always be received, not for the purpose of proving a different contract, or the intent of a contract; but of explaining words in a contract which the parties have used, (2 *Phil. Ev. 9th ed.* 314,) or, for the purpose of showing that the uncertainty which appears on the face of the instrument does not in fact exist. I think this case comes directly within the spirit of *Dewitt* v. *Walton*, (5 *Seld.* 572,) and no stronger case is found to sustain the decision. "It must appear on the face of the instrument, that the agent undertook to bind the principal." They did attempt to bind their successors in office by creating a lien upon the property of the principal, and which lien they were authorized to create. If this was at all ambiguous, proof should have been permitted to settle the ambiguity. (*See note a to Moss* v. *Livingston*, 4 *Comst.* 210. *Brockway* v. *Allen*, 17 *Wend.* 40.)

Leaving out of view, and of examination, many other questions raised in this case, I have come to the conclusion, that the learned referee was in error, in dismissing the complaint for the reasons given, and in excluding the evidence offered by the plaintiffs above referred to. We do not discuss other questions.

The judgment must be reversed, and a new trial granted.

[CLINTON GENERAL TERM, May 8, 1866. *James, Rosekrans* and *Potter*, Justices.]